## St. Louis, Jacksonville and Chicago Railroad Co.

### *v.*

### John Mathers.

1. Condition subsequent *on conveyance of land — illegality.* The validity of a condition subsequent to the conveyance of real estate depends upon its being such as the law will allow to divest an estate, for, if the law deems the condition void as against its own policy, then the estate will be absolute, and free from the condition.

2. Illegal contract — *rights and remedies in respect thereto.* A court of equity will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of doing that which is illegal; and where such a contract has been executed by one of the parties, by conveying real estate, a court of equity will not, in general, interfere, but will leave the title to the property where the parties have placed it.

3. Where a party to an illegal or immoral contract comes himself to be relieved from the contract, or its obligations, he must distinctly and exclusively state such grounds of relief as the court can legally attend to; and he must not accompany his claim to relief, which may be legitimate, with other claims and complaints, which are contaminated with the original immoral purpose; for, if he sets up as a ground for relief the non-fulfillment of the illegal contract on the other side, and thereby he is released from his obligation to perform it, that shows that he still relies upon the immoral contract and its terms for relief, and therefore the court will refuse it.

4. So, where a party conveyed real estate to a railroad company chartered by an act of the legislature and invested with the power of condemning private property upon the ground that its road was for the use of the public, upon an agreement or condition that the company would not establish a depot or station within three miles of a particular point, and the company violated the agreement, and did establish a station within three miles of the designated point, it was *held*, that the condition or agreement was illegal, and that a reconveyance of the property could not be decreed on account of the violation of it by the railroad company.

5. RAILROADS—*contracts not to establish stations at any point on the line of, are illegal.* The directors of a railroad company are the trustees both of the public and of the stockholders of the company, and, in the discharge of their twofold duty, are required to act with reference to the public convenience on the one hand and the private interests of the stockholders on the other, and the interests of both forbid that there should be a positive prohibition against the establishment of stations at any point on the line of the road, and a contract which prohibits the establishment of such stations will not be enforced in a court of equity.

APPEAL from the Circuit Court of Cass county; the Hon. CHARLES TURNER, Judge, presiding.

The appellee, together with Richard Yates, James L. Beggs, William Greene and John Bennett, by deed dated April 25, 1860, but in fact executed on the 4th of June, 1860, conveyed 200 lots in the town of Ashland, in Cass county, to M. Stacy, Wesley Mathers and W. T. Beekman, trustees, as is recited in the deed, for and in consideration of the benefits to be derived by the grantors from the construction of the Tonica and Petersburg railroad, and of $1, in trust that the said lots should be sold and the proceeds applied, first, to the payment of any of the bonds described in a deed of trust

made by the Petersburg and Tonica Railroad Company to the trustees, on the 20th of April, 1860, which should be outstanding and unpaid after the 1st day of November, 1861, and second, to the erection or improvement of station houses or other edifices of the railroad company, in Ashland.

On the 2d day of May, 1860, the board of directors of the Tonica and Petersburg Railroad Company adopted the following preamble and resolution:

"Whereas, some of the proprietors of the towns of Sinclair, Yatesville, Ashland and Tallula, located on the line of the Tonica and Petersburg railroad, propose donating a number of lots in said towns for the purpose of aiding in the completion of said road from Jacksonville to Petersburg; and whereas, said parties are not willing to make such donations unless the board of directors will agree that no depot or station shall be established on the line of said road in less than three miles of each of said towns; therefore, be it

"*Resolved*, That this company will accept such donations upon the express condition that, provided such donations be made, no depot or station shall be established within three miles of either of said towns, on the line of the said Tonica and Petersburg railroad."

In October, 1862, the Tonica and Petersburg Railroad Company, and the Jacksonville, Alton and St. Louis Railroad Company, were consolidated, and the appellant, the St. Louis, Jacksonville and Chicago Railroad Company, was thereby created a corporation, and invested with the franchises and other property of both companies. This consolidation was fully legalized by an act of the legislature, approved February 13, 1863.

One of the articles of consolidation is as follows:

"All just debts, guaranties and liabilities existing against said original companies, parties hereto, at the time of the taking effect of this consolidation, shall be and are hereby assured, and the same shall be provided for, paid and dis-

charged by the said St. Louis, Jacksonville and Chicago Railroad Company."

Appellee filed his bill in chancery, setting up the facts before stated. and, also, that the sole consideration for the execution of the deed by himself and his co-grantors for the 200 lots, was the promise and agreement in the resolution of the board of directors of the Tonica and Petersburg Railroad Company, of the 2d of May, 1860; that such promise and agreement had been violated by the location of stations or depots within three miles of Ashland, and that, since the execution of the deed. he had acquired all the interests of his co-grantors in the lots. The bill prays that the trustees be required to convey to the complainant the 200 lots, and that the appellant, the St. Louis, Jacksonville and Chicago Railroad Company, be required to pay appellee the damages he has sustained by reason of the failure to perform the agreement.

Cross-bill was filed by the appellant, the St. Louis, Jacksonville and Chicago Railroad Company, alleging that it had been compelled to and had paid $23,294.55 of the indebtedness of the Tonica and Petersburg Railroad Company, and for the payment of which the lots were to be sold, by the terms of the trust expressed in the deed, and praying that the lots be sold, or as many of them as should be necessary for the purpose of repaying to it the said sum of $23,294.55, and the reimbursement of taxes, etc.

Answers were filed to the original and cross-bills, and, on final hearing, the court below decreed that the trustees convey the said 200 lots to appellee, and that, upon their so doing, he pay the sum of $681.25, taxes paid by the appellant, the St. Louis, Jacksonville and Chicago Railroad Company, together with interest thereon, at the rate of six per cent per annum, from the date of the several payments, and that the cross-bill be dismissed.

The case is brought here by appeal, and the following errors assigned:

*First*—That the court erred in making a decree that the Ashland lots, conveyed by the trust deed of the 25th of April, 1860, should be conveyed to John Mathers.

*Second*—That the court erred in dismissing the cross-bill of the St. Louis, Jacksonville and Chicago Railroad Company.

*Third*—That the court erred in not rendering a decree that the Ashland lots, or such parts as might be necessary, should be sold to reimburse to the St. Louis, Jacksonville and Chicago Railroad Company the money paid in the liquidation of the construction bonds issued by the Tonica and Petersburg Railroad Company.

*Fourth*—In not making the payment of taxes a condition precedent to the conveyance of said lots.

Messrs. Dummer & Brown, for the appellant.

Messrs. Morrison & Whitlock, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

The deed for the property, which is the subject of this litigation, professes, upon its face, to have been executed in consideration of the benefits to be derived by the grantors from the construction of the Tonica and Petersburg railroad, and of $1. It purports to invest the trustees therein named, and their successors, with the fee simple title to the property, which is to be sold and conveyed by them "at either public or private sale, in such parcels, at such times and upon such terms as to them shall seem meet." It will be observed that there is nothing in the language of the deed, nor in anywise connected with the title of record, whereby a *bona fide* purchaser from the trustees would have been charged with constructive notice of the condition subsequent upon which it is now claimed the deed was executed, and that the

relief sought is based upon evidence of facts entirely independent of the deed.

Under these circumstances, the burden was upon appellee to show such facts as render it inequitable for the title to remain where it was vested by the operation of the deed, and, until this was done, the appellant was justified in relying alone upon the deed.

The contract with the board of directors of the Tonica and Petersburg Railroad Company, which is alleged to have been the real and only consideration for the execution of the deed, is in the nature of a condition subsequent. At the time the preamble and resolution of the board of directors, which constitute the alleged contract, were adopted, as well as at the time the deed was executed, the road was not completed, nor were all of its depots and stations established. The condition that no depot or station shall be established within three miles of either of said towns, on the line of said road, is unlimited in point of time, and, if valid, might be enforced as readily after the expiration of fifty years as one year. There is no evidence of fraud or mistake, the proof showing that the deed was drawn by appellee, and that the condition stated in the preamble and resolution of the board of directors was purposely omitted from the deed by the request of the secretary of the company; and the only ground upon which the relief prayed is asked, is, the failure of the railroad company to observe the condition in the preamble and resolution.

In the view that we take of this case, we do not deem it necessary to discuss whether the evidence introduced for the purpose of showing a different consideration from that expressed in the deed should have been excluded for the reason that it tended to affect the validity of the deed, as we think the evidence was clearly inadmissible upon another ground.

The validity of a condition subsequent depends upon its being such as the law will allow to divest an estate, for if the law deems the condition void as against its own policy, then the estate will be absolute and free from the condition.

1 Story's Equity, § 288; 4 Kent's Coms. (8th ed.) 134; 1 Washburn on Real Estate (2d ed.) 469.

Nor is the rule different if we shall regard this as a proceeding to require a re-conveyance of the property, on account of a want or failure of consideration. A court of equity will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of doing that which is illegal; and where such a contract has been executed by one of the parties by conveying real estate, a court of equity will not, in general, interfere, but will leave the title to the property where the parties have placed it. *Swain* v. *Bussell*, 10 Ind. 438; *Inhabitants, etc.* v. *Eaton*, 11 Mass. 368; *Hoover* v. *Pierce*, 26 Mississippi, 627; *Cushwa* v. *Cushwa*, 5 Maryland, 44; *White* v. *Hunter*, 3 Foster, 128; *Murphy* v. *Hubert*, 4 Harris, 50; *Barton* v. *Morris*, 15 Ohio, 408; *Wright* v. *Wright*, 6 Littell, 8, 12.

It is said, in 1 Story's Equity, § 296, a: " But where a party to an illegal or immoral contract comes himself to be relieved from that contract, or its obligations, he must distinctly and exclusively state such grounds of relief as the court can legally attend to; and he must not accompany his claim to relief, which may be legitimate, with other claims and complaints which are contaminated with the original immoral purpose; for if he sets up, as a ground of relief, the non-fulfilment of the illegal contract on the other side, and thereby he is released from his obligation to perform it, that shows that he still relies upon the immoral contract and its terms for relief, and therefore the court will refuse it."

The alleged agreement or condition, on account of the non-performance of which relief is here sought, was, that a railroad company, chartered by an act of the legislature, and invested with the power of condemning private property, upon the ground that its road is for the public use, shall not establish a depot or station within three miles of Ashland. It can not be pretended, for a moment, that the

board of directors had authority to make such an agreement or condition. They were trustees both for the public and the stockholders of the company, and in the discharge of their two-fold duty, were required to act with reference to the public convenience, on the one hand, and the private interests of the stockholders upon the other. Between these there was no conflict, for the greater the local conveniences for the use of the road by the public, the greater would be its local business, and, of consequence, the profits of the stockholders. The interests, therefore, both of the stockholders and the public, forbid that there should be a positive prohibition against the establishing of stations at any points on the line of the road. Whenever the public convenience requires that a station on a railroad should be established at a particular point, and it can be done without detriment to the interests of the stockholders of the company, the law authorizes it to be established there, and no contract between a board of directors and individuals can be allowed to prohibit it.

If the present contract could be sustained, then, upon the same principle, a board of directors, and individuals desiring to remove all competition in the sale of town lots, might contract so that upon the entire line of a great railway there would be no stations, save where the parties contracting should be interested in the sale of town lots; and thus practically exclude the mass of the public from any beneficial use of the road.

In *Bestor et al.* v. *Wathen et al.* 60 Ill. 138, a contract between the officers of a railroad company and certain private parties, to secure the location of a railroad at a particular point, was held void, as being contrary to public policy, and not susceptible of being enforced in a court of equity. It was there said: "When the people, through the legislature, grant to a company the right of eminent domain for the purpose of constructing a railway, the grant is made because it is supposed the road will bring certain benefits to the public. When the company is incorporated, and subscriptions are

made to the stock, the money is subscribed upon the understanding that the officers intrusted with the construction of the road will so locate its line and establish its depots as to bring the highest pecuniary profit to the stockholders, compatible with a proper regard to the public convenience. These, and these alone, are the considerations which should control the action of the president and directors of the road, and so far as they permit their official action to be swayed by their private interests, they are guilty of a breach of trust toward the stockholders, and of a breach of duty to the public at large. A court of equity will not enforce a contract resting upon such official delinquency, or even tending to produce it."

Appellee stands *in pari delicto* with the board of directors, so far as this agreement or condition is concerned. He voluntarily, according to his own showing, contracted for this "breach of trust toward the stockholders of the railroad company, and breach of duty to the public at large." Their loss was to be his gain. He was willing, at whatever expense it might be to others, to purchase a monopoly whereby to enrich himself, and having failed to accomplish his purpose, now asks a court of equity to reinstate him in the condition he was before entering into this unlawful combination.

The case presents no facts or circumstances meriting the consideration of a court of equity.

We perceive, however, no end to be subserved by the cross-bill. By the consolidation, the appellant occupies precisely the same relation to this property that the Tonica and Petersburg Railroad Company did before the consolidation. There is no ambiguity in the language employed to express the trust, and no disposition is shown on the part of the trustees to refuse to execute it. It would undoubtedly have been competent, either for the bondholders or the railroad company to have required the trustees to sell the property and apply the proceeds to the payment of the debts remaining due after the 1st of November, 1861, which are designated

in the declaration of trust; but it was equally within their power to waive this and look to some other source for the necessary means to make such payment. This was done. No such indebtedness as is therein mentioned is now in existence. No express authority is given to apply the proceeds arising from the sale of the property to reimburse others for the payment of the debts therein indicated, and no reason is apparent to us why we should imply authority for that purpose. We are, therefore, of opinion that the appellant is not entitled to be reimbursed for the payments it has made, from this source; and that it is the duty of the trustees to apply the proceeds to arise from the sale of this property "to the erection or improvement of station houses, or other edifice or edifices, of the appellant, within the town of Ashland, as directed by the declaration of trust; but that this should be done under the direction of the appellant, through its proper officers.

The decree of the court below is reversed.

*Decree reversed.*