[Sac. No. 1448. Department One.—September 4, 1906.]

## A. K. RIPPERDAN et al., Appellants, v. NANCY E. WELDY, and JENNIE W. JONES, Respondents.

ACTION TO SET ASIDE CONVEYANCE—ISSUE AS TO MENTAL COMPETENCY —SUPPORT OF FINDING—CONFLICTING EVIDENCE—INTERESTED WITNESSES.—In an action to set aside a conveyance, where the mental competency or incompetency of the grantor was the controlling issue, and the evidence was conflicting thereupon, the finding of the court in favor of his competency to make the deed was sufficiently sustained by the circumstances proved, together with the testimony of witnesses for the defendant intimately acquainted with him who testified to such competency, though several of them were financially interested in the result. The credibility of all the witnesses for the defense was for the trial judge to determine, under the circumstances, notwithstanding such interest.

ID.—SUFFICIENCY OF FINDING.—A finding that at the time of the execution of the deed the grantor "was entirely competent, mentally and physically, to transact the business of executing and delivering to . . . defendants the conveyance and bill of sale . . .; that at the time . . . the said Isaac Ripperdan [grantor] was in full possession of his mental faculties and fully understood the transaction," sufficiently covers the issue as to his mental competency at that time.

ID.—CONSTRUCTION OF FINDINGS—INFERENCES OF FACT.—Findings are to be construed to support the judgment rather than to defeat it, and when from the facts found by the court other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court. The finding that the grantor "fully understood the transaction," when the deed was executed and delivered, involves necessarily the inference that he was not then "entirely without understanding," and is a finding of the ultimate fact in issue.

ID.—USE OF PROPERTY AND SUPPORT FOR LIFE—RESERVATION.—If the deed were construed as giving to the grantor the use of the property and a support for life therefrom, and to grantees a conveyance to take effect at the grantor's death, reserving to the

grantor the use and enjoyment of the property during his life, it would not affect the validity of the deed as a conveyance. Estates may be granted under section 707 of the Civil Code to commence *in futuro.*

ID.—VALIDITY—TRUST FOR MAINTENANCE NOT PUT IN ISSUE.—Where the complaint raised only the issues whether the grantor was incompetent and whether the deed was obtained by fraud and undue influence, and nowhere charged that there was a conveyance upon any express trust, a determination that the conveyance was void because made in trust for purposes not permitted by the code, or that it conveyed no beneficial interest beyond the life of the grantor, and any finding on that question, would be outside of the issues, and would, if made, be entitled to no consideration.

ID.—VOID PROVISION AGAINST ALIENATION—CONSIDERATION—RESCISSION NOT INVOLVED.—A provision that the grantee should not alien the estate granted during the lifetime of the grantor is void as being in restraint of alienation; and the mere fact that part of the consideration for the transfer consisted of a covenant which could not be legally enforced would not make the deed void. A deed by one who is competent, made freely and without fraud, conveys title, though the consideration may fail in whole or in part. Whether such failure affords a basis for rescission is a question not involved in the issue raised.

ID.—UNLAWFULNESS OF CONSIDERATION—CONSTRUCTION OF CODE—ACQUIRED RIGHTS NOT DISTURBED.—Whatever effect section 1608 of the Civil Code may have upon executory contracts where part of the consideration is unlawful, it cannot be construed to permit a grantor of property who has received and retained the consideration for his conveyance to recover the property conveyed upon the sole ground that the consideration was unlawful in part. Where a contract based on an illegal consideration has been fully and voluntarily executed, if the parties are *in pari delicto,* the court will not interfere to disturb the acquired rights of either at the instance of the other.

APPEAL from a judgment of the Superior Court of Stanislaus County, and for an order denying a new trial. G. W. Nicol, Judge presiding.

The facts are stated in the opinion of the court.

Robert L. Hargrove, for Appellants.

The contract had no adequate consideration. (*Odell* v. *Moss,* 130 Cal. 352, 62 Pac. 556; *Morrill* v. *Everson,* 77 Cal. 115, 19 Pac. 190; Civ. Code, sec. 3391; 2 Pomeroy's Equity Jurisdiction, sec. 920; *Wilson* v. *Moriarty,* 77 Cal. 600, 20 Pac.

134.)    The conveyance was void under sections 1608 and 3391 of the Civil Code.   The devisees and heirs of Ripperdan are not *in pari delicto,* and are not barred from the courts. (*Martin* v. *Wade,* 37 Cal. 174.)   The failure to ask a rescission and offer to restore does not preclude a rescission, if the fact justifies it.   (*More* v. *More,* 133 Cal. 489, 65 Pac. 1045; *Angus* v. *Craven,* 132 Cal. 692, 64 Pac. 1091; *Larkin* v. *Mullen,* 128 Cal. 449, 60 Pac. 1091.)

W. H. Hatton, and L. J. Maddux, for Respondents.

Inadequacy of consideration is no ground for setting aside a conveyance.   (9 Cyc. 365; *Barry* v. *St. Joseph's Hospital* (116 Cal. xvi), 48 Pac. 68, 69; *Hammond* v. *Wallace,* 85 Cal. 522, 20 Am. St. Rep. 239, 24 Pac. 837.)   Ripperdan having been fully satisfied with the transaction, and not having repudiated it up to the day of his death, he fully ratified it, and his heirs and devisees cannot set it aside on the question of inadequacy of consideration.   (*Barry* v. *St. Joseph's Hospital* (116 Cal. xvi), 48 Pac. 68, 69.) ·

SLOSS, J.—This action was brought by the plaintiffs, heirs, devisees, and legatees of Isaac Ripperdan, deceased, to set aside a deed of certain real estate and a bill of sale of personal property made by Ripperdan on the fourth day of May, 1901, to Nancy E. Weldy and Jennie W. Jones.   The complaint sets forth, as grounds for the relief sought, unsoundness of mind of the deceased, as well as undue influence and fraud exercised by the grantees, and alleges that the defendant Nancy E. Weldy occupied a confidential relationship toward the grantor, and that there was no consideration for the transfers.   It is alleged, further, that the grantees had, after delivery of the deed to them, conveyed portions of the land to other defendants, who, it is asserted, took with notice of the incompetency of Isaac, and of the undue influence and fraud practiced by the defendants, Weldy and Jones.   The prayer is for appropriate equitable relief.   The defendants answered, denying all of the allegations of incompetency, undue influence, and fraud, and denying, necessarily, any notice by the grantees of Weldy and Jones of any such defects in the original conveyance.   The answer also denies the existence of any confidential relation and the want of consideration.

After an extended trial, the court made its findings, which were in favor of the defendants on every issue, and judgment for said defendants for their costs followed. The plaintiffs appeal from the judgment and from an order denying their motion for new trial.

The main contention of the appellants is on their appeal from the order, and is based on the insufficiency of the evidence to support the findings. As has been said, the trial was protracted. The statement on motion for a new trial shows that some fifty witnesses were examined. It would be impracticable for us to analyze and discuss the testimony of each of these witnesses. Without undertaking such task, we have no hesitation in saying that, on the issues as to which the defendants' evidence was not preponderating or undisputed, there was, putting appellants' case in its strongest light, a distinct and substantial conflict of evidence, which imposed upon the trial court the duty of determining the disputed facts. Nothing is better settled in this court than the rule that, on appeal, the verdict of a jury or the finding of a trial court on conflicting testimony cannot be reviewed.·

The nature of the testimony and of the questions which were presented to the trial court may be indicated by a brief statement of facts which appeared substantially without dispute.

Isaac Ripperdan was a farmer, or "rancher," who had for many years been living on his property in Stanislaus County. He was a bachelor. In 1876, Nancy E. Weldy, his niece, with her husband and children, one of whom is the defendant Jennie W. Jones, came to live with him. Thereafter, until his death, in 1904, Mrs. Weldy acted as his housekeeper. It is plain from the evidence that in that capacity she made herself very useful, and that a strong attachment existed between uncle and niece. On May 4, 1901, when the deed and bill of sale now in controversy were made, Isaac Ripperdan was eighty-five years of age. He was, physically at least, somewhat enfeebled by his advanced years, and suffered from impaired eyesight, due to an injury sustained some years before. On May 4, 1901, he conveyed all of his real and personal property, of the value, as found by the court, of about fifty thousand dollars, over and above encumbrances, to Mrs. Weldy and Mrs. Jones. At the same time, and as part of

the same transaction they executed an agreement, by which, in consideration of the deed and bill of sale, they agreed to provide him during his life with board, lodging, clothing, and, if needed, medical attention, to allow him the use of a room in the dwelling on the property conveyed, and free access to all the premises, to furnish him with a buggy and team, and to care for the same, and to pay him the sum of two thousand dollars a year in quarterly installments during his natural life. They further agreed not to sell or convey any part of the premises during his lifetime. Upon the execution of these documents, Nancy E. Weldy and Jennie W. Jones took possession and control of the premises and the personal property. They thereafter managed the farm, borrowed in their own names the money that was needed to carry on operations, and in all ways assumed and claimed ownership of the property. In June, 1902, an agreement was made modifying the restrictions upon sale contained in the agreement of May, 1901, by permitting the sale of portions of the premises to pay the indebtedness on the lands. Under this modification, the conveyances by Weldy and Jones to other defendants, set forth in the complaint, were made.

Isaac continued to live upon the property, and the agreement with him seems to have been faithfully carried out. He enjoyed the care and privileges which Mrs. Weldy and her daughter had contracted to give, and there was evidence that the payments provided for were made to him.

In 1888 he had made a will, in which, after giving Nancy Weldy a life interest in the "home place" (a portion of the property here in dispute), he divided the bulk of the residue of his estate between his brothers, sisters, nephews, and nieces, who are the plaintiffs here. Upon his death the will, in which Nancy was named as executrix, was offered for probate. This action was commenced after the will was filed, but before it was admitted to probate.

Most of the testimony at the trial was directed to the question of Isaac's mental condition, and it is to this point that the argument of appellants is principally directed. So far as the issues of fraud and undue influence are concerned, the evidence for the defendants was certainly ample to support the findings if, indeed, it did not decidedly preponderate. The court was fully justified in finding, as it did, that no

confidential relation existed, and this being so, no presumptions against the validity of the transfer arose.

On the issue of the grantor's competency, mentally, to transact business of this character, many witnesses testified on either side. Most of them qualified as "intimate acquaintances" of Isaac Ripperdan (Code Civ. Proc., sec. 1870), and as such, gave opinions, "respecting his mental sanity." Generally speaking, the plaintiffs' witnesses expressed the opinion that he was not, in May, 1901, mentally capable of transacting important business, while the contrary view was expressed by the witnesses called by the defendants. The subscribing witnesses to the deed and bill of sale of May 4, 1901, also testified to their opinion in favor of the grantor's soundness of mind. (Code Civ. Proc., sec. 1870.) The court, in determining the ultimate fact, evidently regarded the testimony of defendants' witnesses as better entitled to credit. This question relating, as it did, purely to the weight of evidence, was peculiarly for the trial court. With its conclusion we cannot interfere. As to several of the witnesses, appellants argue that they were "interested, financially, and therefore disqualified from giving an opinion." But an interest in the litigation does not, of itself, work any such disqualification. By section 1879 of the Code of Civil Procedure, it is provided that "neither parties nor other persons who have an interest in the event of an action or proceeding are excluded" as witnesses. "At common law interest disqualified any person from being a witness. That rule has been modified by statute. In this state interest is no longer a disqualification, and the disqualifications are only such as the law imposes." (*Merriman* v. *Wickersham,* 141 Cal. 567, [75 Pac. 180].) Probably, counsel do not intend to claim that these witnesses were in a strict sense not competent to testify, but, rather, that their interest was such that no weight or credence should be given to their testimony. But that is not a question for this court. The interest of the witnesses on either side was undoubtedly a proper matter for the trial court to consider in weighing their testimony; but whether a witness be interested or not, it still remains for that court to determine whether, under all the circumstances, his testimony is to be credited or not. The witnesses stated the reasons on which their opinions were based, and their conclusions were no doubt weighed

in the light of their reasons. Apart from these opinions, there was a good deal of evidence regarding the relations of the parties and the circumstances surrounding the transactions in question. Much of it had a bearing, one way or the other, on the question of Isaac's mental condition. Without undertaking any more elaborate statement of the facts shown, we repeat that after a careful examination of the record we are satisfied that the evidence as to competency was ample to sustain the findings.

Appellants contend, further, that there was no sufficient finding on the issues as to Isaac's competency. The court found "that on said 4th day of May, 1901, said Isaac Ripperdan was entirely competent, mentally and physically, to transact the business of executing and delivering to Nancy E. Weldy and Jennie W. Jones, defendants, the deed of conveyance and bill of sale hereinbefore mentioned. That at the time of the execution and delivery of said deed of conveyance and bill of sale by said Ripperdan to said Nancy E. Weldy and Jennie W. Jones, the said Isaac Ripperdan was in full possession of his mental faculties and fully understood the transaction."

It is objected that the court has merely found that Isaac was "competent to transact business." Appellants claim that competency or incompetency is a conclusion of law, to be drawn from facts, and that there should have been a finding on the *fact* of soundness or unsoundness of mind. The cases cited do not sustain the proposition that competency or capacity to contract may not properly be found as an ultimate fact; but if we should concede the rule to be as claimed, the finding that Isaac Ripperdan "was in full possession of his mental faculties and fully understood the transaction" amply covers the issue. The Civil Code (sec. 38) provides that "A person entirely without understanding has no power to make a contract of any kind. . . ." Section 39 reads: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission, as provided in the chapter on rescission of this code." In the one case the contract is void, in the other merely voidable. (See *More* v. *Calkins,* 85 Cal. 177, [24 Pac. 729].) In the case at bar no rescission has been or is attempted. Plaintiffs claim

CXLIX Cal.—43

that the deed and bill of sale were absolutely void from the beginning. They attempted to establish a case within the purview of section 38. The phrase "entirely without understanding," as used in that section, means a want of capacity to understand transactions· of the kind involved. (*Jacks* v. *Estee*, 139 Cal. 507, [73 Pac. 247].) It is impossible that a person without the capacity of understanding a particular transaction can in fact understand it. The finding, therefore, that at the time of the execution and delivery of the deed and bill of sale Isaac Ripperdan "fully understood the transaction" involves necessarily the inference that he was not "entirely without understanding," and is a finding of the ultimate fact in issue. Findings are to be construed so as to support the judgment, rather than defeat it (*Warren* v. *Hopkins*, 110 Cal. 506, [42 Pac. 986]) ; and when from the facts found by the court other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court. (*Breeze* v. *Brooks*, 97 Cal. 77, [31 Pac. 742] ; *Krasky* v. *Wollpert*, 134 Cal. 338, [66 Pac. 309].)

The appellants base several contentions upon the fact, shown by the evidence, that the deed and bill of sale of May 4, 1901, were executed together with the agreement above mentioned, whereby Mrs. Weldy and Mrs. Jones agreed that he should, to a certain extent, have the use of the property during his life, that they would give him certain care and attention, and that they would pay him two thousand dollars a year during his life. It is claimed that all the instruments must be read together, and that so read they constitute a conveyance, to take effect at the grantor's death, reserving to the grantor the use and enjoyment of the property during his life. If this construction were adopted, it would not affect the validity of the deed as a conveyance. Any objection to which deeds creating estates to commence in future may have been subject at common law (*Hawes* v. *Stebbins*, 49 Cal. 369; *Chandler* v. *Chandler*, 55 Cal. 270) has been removed in this state by section 767 of the Civil Code. (*Blakeman* v. *Miller*, 136 Cal. 139, [89 Am. St. Rep. 120, 68 Pac. 587].) Again, the argument is made that the effect of the various instruments of May 4, 1901, was to transfer the property to Mrs. Weldy and Mrs. Jones in trust for the maintenance of the

grantor during his life,—a purpose which, it is claimed, is
not authorized by the Civil Code (sec. 857),—or that, if the
trust be valid, it terminated at the grantor's death, and there
is a resulting trust in favor of his estate. We need not consider
whether any trust was created or sought to be created by
the transaction of May 4, 1901, for the reason that the ques-
tion is not within the issues made by the pleadings. The com-
plaint sets forth an ordinary deed and bill of sale, which, it
is alleged, were procured without consideration by the undue
influence and fraud (false and specious promises) of the de-
fendants, Weldy and Jones, and which were signed by one in-
competent to transact business. These allegations were denied.
The complaint nowhere charged that there was a conveyance
upon express trusts, whether for authorized or unauthorized
purposes. No issue was presented which would have author-
ized the court to set aside the deed except for fraud, undue
influence, or incompetency. A determination that the con-
veyance was void because made in trust for purposes not per-
mitted by the code, or that it conveyed no beneficial interest
beyond the life of the grantor would have been outside of the
issues, and a finding of facts from which such determination
followed would, if made, have been entitled to no con-
sideration.

Finally, with reference to this agreement, it is argued that
the provision against alienating the estate during the lifetime
of Isaac is void, and that with it, the consideration for the deed
fails. If the deed transferred a title in fee simple, a covenant
by the grantees that they would not transfer the property
is void as repugnant to the interest created by the deed. Sec-
tion 711 of the Civil Code declares against repugnant *con-
ditions* restraining alienation. "But the rule does not de-
pend upon the mere form in which the restraint is imposed.
It avoids, as well, covenants of the grantee against alienation
as conditions of like nature imposed by the grantor; such
covenants, if not within the letter of section 711 of the Civil
Code, are yet obnoxious to the policy of which that section
is a partial expression." (*Prey* v. *Stanley,* 110 Cal. 423, [42
Pac. 908].) But the mere fact that a part of the consideration
for the transfer consisted of a covenant which could not be
legally enforced, does not make the deed absolutely void. A
deed made freely, voluntarily, and without fraud by one who

is competent passes title, even though the consideration may fail in whole or in part. Whether the consideration failed or became void so as to afford a basis for rescission is another question which does not arise here. If the invalidity of the promise not to convey the property during Isaac's life furnishes a ground for rescission under sections 1689, 3406, and 3407 of the Civil Code (which may well be doubted), such ground has not been alleged nor such relief sought. Appellants contend that under section 1608 of the Civil Code the entire contract is void if any part of the consideration is unlawful. Whatever may be the effect of this section as to contracts which are executory in whole or in part, we are satisfied that it cannot be construed so as to permit the grantor of property who has received and retained the consideration for his conveyance to recover the property conveyed upon the sole ground that the consideration was unlawful in part. It is the general rule that where a contract, based on a consideration contrary to law, immoral, or opposed to public policy, has been fully and voluntarily executed, if the parties are *in pari delicto*, the courts will not interfere to disturb the acquired rights of either at the instance of the other. (9 Cyc. 549; *Hill* v. *Freeman*, 73 Ala. 200, [49 Am. Rep. 48] ; *McGregor* v. *Donnelly*, 67 Cal. 147, [7 Pac. 422] ; *Patterson* v. *Donner*, 48 Cal. 369; *St. Louis etc. R. R. Co.* v. *Mathers*, 71 Ill. 592, [22 Am. Rep. 122] ; *Myers* v. *Meinrath*, 101 Mass. 366, [3 Am. Rep. 368] ; *Brower* v. *Fass*, 60 Neb. 590, [83 N. W. 832].) In view of this rule (in support of which many more cases might be cited) section 1608 must be held to have application only to contracts which are, in part at least, executory.

There are no other points which, in our opinion, require special notice.

The judgment and order appealed from are affirmed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.