[Civ. No. 10398.   Third Dist.   May 31, 1963.]

SHIRLEY LEE MILLS, Plaintiff and Respondent, v. ALBERT FRANCIS KOPF et al., Defendants and Appellants.

Horace E. Dunning for Defendants and Appellants.

Wilke, Fleury & Sapunor and Richard H. Hoffelt for Plaintiff and Respondent.

PIERCE, P. J.—An ex-serviceman, Bernard Kopf, died from injuries suffered in an automobile accident. He held two policies of insurance for the benefits of which his widow, plaintiff-respondent (hereinafter Shirley) and his parents, defendants-appellants (hereinafter collectively "parents") advanced conflicting claims.

The question on this appeal is whether an agreement compromising these claims is binding upon the parents. Their

contention is that it is not, because the mother was incompetent and the father was acting under "undue influence" when the agreement was signed and that their acts are therefore void. More accurately stated, the contention of the parents seems to be that they may avoid the *obligations* of the contract. They have been willing to, and have, accepted all of its *benefits*.

The trial court denied the parents' contentions. We agree with the holding of the trial court.

Bernard and Shirley were married March 23, 1954. Bernard, a member of the Armed Forces, was sent overseas two weeks later. Returning to the United States, he was discharged from the service in October 1955. On November 27, 1955, he was in an automobile accident, receiving injuries from which he died December 5, 1955.

The two insurance policies were (1) a policy of Servicemen's Indemnity Insurance in the sum of $10,000 and (2) a Metropolitan Life Insurance Company policy for $8,000 under a federal employees' group plan.

The widow, Shirley, and the parents each claimed all benefits from both policies. Regarding the former, each filed claims with the Veterans' Administration. To collect the benefits of the Metropolitan policy, the parents brought an action in the United States District Court.

On May 7, 1956, an agreement negotiated by the attorneys for the respective parties was signed by the parents. On May 10, 1956, it was executed by Shirley. By its terms the parents agreed to abandon their claims to the $10,000 Servicemen's Indemnity Insurance and the $8,000 Metropolitan policy was to be divided, Shirley and the parents each receiving $4,000 thereof, plus accrued interest.

Contemporaneously, the parents signed a document addressed to their attorneys purporting to be an abandonment of the claim.

The suit in the United States District Court was apparently dismissed, the policy proceeds were paid by Metropolitan Life Insurance Company and the distribution was made as in said compromise agreement provided. The parents have retained their portion of these proceeds. In their answers they made no offer to restore the money received.

Notwithstanding the signing by the parents of the "abandonment," the appeal to the Board of Appeals of the Veterans' Administration was not abandoned by the parents.

Prior to the execution of the settlement agreement the par-

ents' attorney, Charles Miller, had been notified by the regional office of the Veterans' Administration in Wyoming that it would recommend allowance of Shirley's claim and denial of the parents' claim of the $10,000 policy.

More than a year later, however, on September 4, 1957, the mother, Mary Kopf, received a letter from the Central Office Veterans' Administration, Washington, D. C., advising her that the Board of Veterans' Appeals had decided that Shirley could be regarded as a beneficiary only for $1,000 of the benefits; that the remaining $9,000 would be paid to the parents. The parents then proceeded to collect the monthly installments paid by the government under this ruling.

This action was brought by Shirley under the compromise agreement and the trial court gave judgment against defendants for $5,100.21 theretofore paid by the Veterans' Administration and directed the parents to assign all rights in the balance of the proceeds to plaintiff.

The primary point made by the parents on appeal is that the mother was incompetent when she signed the agreement. ▊ The trial court, after hearing the evidence, denied this contention. Our power begins and ends with a determination whether substantial evidence supports the trial court's determination. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

▊ A contract by a person of unsound mind, but who is not entirely without understanding, made before his incapacity has been adjudicated, cannot be rescinded unless the party purporting to rescind restores or offers to restore any consideration received. (27 Cal.Jur.2d, Insane and Incompetent Persons, § 31, p. 356, and cases cited.)

▊ Appellant, Mary Kopf, cannot restore and has not offered to. She has not been adjudicated an incompetent person. To avoid this contract, therefore, she would have to sustain the burden of proving that she was "entirely without understanding of any kind." ▊ In *Hellman Commercial T. & S. Bank* v. *Alden*, 206 Cal. 592 [275 P. 794], at page 603, it is said:

" 'A contract which is challenged on the ground of incompetency is ordinarily not void, but merely voidable. (*Ripperdan* v. *Weldy*, 149 Cal. 667 [87 P. 276]; 6 Cal.Jur. § 14, p. 33; 9 Cal.Jur. § 21, p. 117; 1 Black on Rescission, § 254, p. 672.) The author of Norton on Bills and Notes, fourth edition, page 295, says: "A man of weak mind, if not a lunatic

or fool, can contract. An epileptic or imbecile mind has been held competent to convey property, . . . and no mere want of business capacity or even monomania will, in the absence of fraud prevent a party from being bound upon a bill, note or endorsement. The mental incapacity to avoid such a contract must amount to an inability to understand the nature of the contract and to appreciate its probable consequences." ' "

Appellants here rely heavily upon the testimony of a psychiatrist who attended Mary Kopf during the period following her son's death. This expert first saw the patient February 18, 1956, and treated her until after May 7, 1956. He diagnosed her condition as "an agitated depression to a psychotic degree." At his recommendation the patient was hospitalized and was given shock treatments, was later released, returned to her home. In May 1956 she appears to have resumed many, if not all, of her household duties.

The psychiatrist testified that the patient, because of her condition, was unable to make decisions and was therefore incompetent in his opinion to transact her ordinary business affairs.

The trial court did not accept the expert's testimony unqualifiedly. It would have been difficult to do so. This testimony included the following (on cross-examination): "Q. There was no time when she had a lucid moment? A. I never saw her when she had. Q. In your opinion would she have a lucid moment during this time? A. No, I don't think so. I think it was with her all the time she was awake."

The claims of Mr. Kopf and of the Kopfs' married daughters who were defendants' witnesses were less extravagant. They found the mother grief-stricken at the death of her son, irreconcilable to the loss, nervous, irritable over noise and in the presence of children, forgetful of names and identity of friends at church, diffident regarding family affairs and dietary matters, despondent to a point where the family feared suicide. But these people who were closest to the mother did not, as did the psychiatrist, describe a person wholly bereft of her senses.

Plaintiff, on the other hand, produced Charles Miller, the parents' attorney, employed by them after Bernard's death to present their claims for insurance benefits and to prosecute the action in the federal court. During the period in question he had had frequent interviews with both the parents. These visits would last from 10 minutes to 2½ hours. During the

visits both clients seemed to understand and discuss their problems intelligently.

The basis of the claim of the parents against the claims of Shirley to the Servicemen's Indemnity policy had been the latter's treatment of Bernard during the marriage. Miller testified most of this information came to him from Mrs. Kopf and was well presented by her. She "appeared to comprehend exactly what was going on."

On the day the contract was signed the conference lasted for an hour and a half. The whole transaction was reviewed. The mother participated in the discussion. Miller had heard from the Veterans' Administration office in Wyoming that the regional office had ruled against his clients' claims; that notices would be sent out in a couple of weeks; that their only recourse was on appeal to the Board of Appeals in Washington; that the claim could not be litigated in the courts. With reference to the suit on the other policy, Miller thought that "if we could ever get to a jury, we would win the case in Federal Court. But I had doubts about getting to a jury." Miller told the parents he would be "more than happy to continue with both matters" but Mrs. Kopf stated she wanted "to get the whole thing over with."

Miller testified that in his opinion Mrs. Kopf was at all times when she consulted with him and when he advised her, competent to understand and transact these business affairs. He stated the only noteworthy thing he observed about Mrs. Kopf's condition was the grief exhibited whenever the death of the son was mentioned and Miller was concerned and expressed some doubts as to her ability to undergo the ordeal of a jury trial.

The trial court was not required, under the circumstances of this case, to accept the testimony of the psychiatrist without question over the conflicting evidence (*Ortzman* v. *Van Der Waal*, 114 Cal.App.2d 167 [249 P.2d 846, 252 P.2d 7], hearing by Supreme Court denied), and particularly over the proof, very convincing here, given by Mrs. Kopf's own attorney.

The unequivocal opinion of a qualified expert is, of course, entitled to weight. The position, apparently taken by appellants, is that it is conclusive. The science of psychiatry, however, has not yet reached the plateau of infallibility where courts must cede their powers of adjudication even when a pronouncement has been made by a psychiatrist in

answering the ultimate question at issue, that his patient was incompetent. (*Ortzman* v. *Van Der Waal, supra.*)

This court recently stated in *Peterson* v. *Ellebrecht,* 205 Cal. App.2d 718 [23 Cal.Rptr. 349], at page 722, that the testimony of a clinical psychologist that "plaintiff was a borderline mental defective whose mental abilities were limited to simple, every-day situations, and who was unable to deal with abstractions such as the concept of title to property" was evidence which would permit a finding *but which would not compel one* "that plaintiff was unable to competently deal with the subject before him with a full understanding of his rights."

In this connection it is to be noted that Mrs. Kopf had consulted with the psychiatrist the day before the contract was signed, and during this visit she and her husband discussed this impending decision with the psychiatrist. It was one of the matters she was concerned about during the interview. It is significant that the record is silent regarding any advice given by the psychiatrist either to Mr. Kopf or to Mrs. Kopf that the latter's condition was such she was incapable of making this business decision.

It is also clear that both the husband and the other members of the immediate family were fully aware of the adverse decision on their claim by the regional office of the Veterans' Administration. One of the daughters sought the advice of her own attorney as to the feasibility of an appeal. The court therefore may fairly have concluded that the compromise agreement was not only the product of the judgment of mother and father, but that it was a decision participated in by those closest to them and that, at the time, the judgment exercised was deemed by all to be quite reasonable.

There is no merit in the contention of appellant Albert Kopf that his signature to the contract was obtained by the undue influence of Shirley. Dealings with her were at all times through attorneys and at arm's length. She was in Wyoming, they were in Sacramento. The theory is that Kopf signed the agreement without due regard to its consequences because he was distraught over his wife's condition, which condition in turn was produced because of the combined circumstance of his son's death and Shirley's treatment of the son before his death and that this is therefore undue influence by Shirley. This is absurd. Appellant Albert Kopf was at no time subjected to Shirley's will. (*Estate of Newhall,* 190 Cal. 709 [214 P. 231, 28 A.L.R. 778].)

The decision of the trial court is supported by substantial evidence. There was no undue influence.

The judgment is affirmed.

Friedman, J., and Schottky, J., concurred.