[Civ. No. 899.   First Appellate District.—February 13, 1912.]

# SAN FRANCISCO CREDIT CLEARING-HOUSE, a Corporation, Respondent, v. L. D. MacDONALD, Appellant.

Action on Note by Assignee—Competency of Assignor—Compromise of Indebtedness—Untenable Defense of Payee's Insanity.— In an action on a note assigned by the payee to the plaintiff after being adjudged mentally competent, a defense that when the note was given by a competent maker, in compromise of his indebtedness to the payee, who had not then been adjudged incompetent, that the payee was so far mentally deranged prior to and at the time of the compromise as to be incapable of entering into a contract of any kind, cannot be sustained nor properly pleaded and proven as a legal defense to the note.

Id.—Construction of Code—Benefit of "Person Without Understanding"—Provision not Available by Person of Sound Mind. The provision in section 38 of the Civil Code that "A person entirely without understanding has no power to make a contract of any kind," was enacted for the benefit and protection of persons who are entirely devoid of capacity to comprehend the nature and subject of a contract, and it cannot be invoked by a person of sound mind in an attempted avoidance of a contract which he may have made with a person subsequently ascertained to be of unsound mind.

Id.—Power of Rescission Under Code Limited to Rescinding Party. The provision in section 39 of the Civil Code, that "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission," was also enacted for the benefit and protection of incompetent persons, and until that right is exercised, the contract is binding upon the party of sound mind.

Id.—Beneficial Contract in Favor of Person of Unsound Mind— Legal Presumption—Estoppel.—Where a person of unsound mind makes a contract which is beneficial to him, the law supplies or presumes in his favor the existence of the requisite capacity, or for his protection estops the other party to set up and sustain the objection as against the legal representative of the payee, that the payee was *non compos mentis* when the contract was made.

Id.—Compromise With Attorney in Fact of Payee—Revocation upon Insanity—Qualification of Rule—Ratification upon Restoration.—Though it may be conceded that if the compromise of the indebtedness which resulted in the note was made with the payee's attorney in fact under a general power of attorney while the payee was entirely without understanding, the powers of the attorney in fact were terminated by operation of law as to persons having notice of the principal's disability, yet this general rule

of law is subject to the qualification that if, upon his restoration to reason, the principal ratifies, or fails after knowledge to repudiate, the acts of his agent, the powers previously granted will be considered merely as suspended, and the acts done by the agent will be deemed assented to by the principal.

Id.—Ratification of Compromise—Assignment of Note for Collection—Estoppel as to Indebtedness.—Where the payee alleged to be insane, upon being restored to reason, assigned the note to the plaintiff for collection, this was an acceptance of the note and a ratification of the compromise from which the note emanates; and upon the principle that "He who can and does not forbid an act which is done in his behalf is deemed to have bidden it," the payee would by the judgment in the action be forever estopped from claiming or suing upon the original indebtedness.

Id.—Mental Condition of Payee at Time of Executing Note—Support of Finding.—It is held that the evidence upon the whole case sufficiently supports the finding of the court that at the time of the execution of said promissory note, the payee had sufficient mental capacity to understand the nature and purpose of said transaction; that a person, though insane in a general sense, may not be deprived of the power of knowing and understanding the nature of ordinary business transactions, and in such case the form of mental unsoundness will not render a person legally incapable of entering into a valid contract.

Id.—Testimony of Physician in Charge of Payee as Insane.—The testimony of the physician who had charge of the payee as an insane person was properly admitted in his behalf, and in behalf of his assignee for collection, as his agent, that he was not, while in his care, so far mentally deranged as to be entirely incapable of knowing the nature and purpose of the transaction in question; and that he was discharged as completely cured mentally, after having been in his care about one year and a half.

Id.—Construction of Code as to Disqualification of Physician—Benefit of Patient—Waiver.—The general rule of law found in subdivision 4 of section 1881 of the Code of Civil Procedure, which in effect declares that a physician may not give in evidence any information concerning the ailment of his patient which was acquired in the performance of his professional duties, was created for the protection of the patient, and operates upon the physician alone, and confers a personal privilege on the patient, which may be expressly or impliedly waived by him in person, or by an agent or attorney acting on his behalf.

Id.—Allowance of Interest upon Note—Ambiguous Provision.—Where the note sued upon is ambiguous as to the mode in which interest should be allowed thereon, the trial court properly adopted that construction which was favorable to the party in whose favor the note was made.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

James H. Boyer, for Appellant.

R. H. Cross, for Respondent.

LENNON, P. J.—This is an action upon a promissory note wherein the plaintiff, as the assignee of the payee for the purpose of collection only, recovered a judgment against the defendant in the sum of $1,546, from which an appeal has been taken upon the judgment-roll and a bill of exceptions.

Plaintiff's case rested upon proof of the execution of the note, the amount due and unpaid thereon, and its assignment to plaintiff for the purpose of collection.

A reversal of the judgment is asked for because of an alleged error in the admission of evidence, and on the ground that the findings of the trial court are not supported by the evidence, and that the findings in turn do not support the judgment.

In substance the undisputed facts of the case, as shown by the evidence and findings, are these: W. S. Gage, W. L. B. Mills and L. D. MacDonald, the defendant in this action, at one time were copartners in the lumber business in the city of San Francisco, under the firm name of Gage, Mills & Company. The copartnership was dissolved by mutual consent on November 20, 1904. At and prior to its dissolution the firm of Gage, Mills & Co. was indebted to W. S. Gage personally in the sum of $19,000, and some two years later Mills, as the attorney in fact for Gage, under a power of attorney executed sixteen years before, effected a compromise of defendant MacDonald's share of the indebtedness due the firm of Gage, Mills & Co. by accepting his promissory note to Gage dated and made April 10, 1906, for the sum of $4,000. Upon the making and delivery of this note by MacDonald to Mills, the latter, as the attorney in fact for Gage, made and delivered to MacDonald Gage's receipt in full of all demands. On March 15, 1906, Gage became, and for more than one year

thereafter remained, an inmate of a private sanatorium conducted by Dr. A. M. Gardner at Belmont, California.

The existence of a prior indebtedness and the execution of the note in settlement thereof were not denied by the defendant; but he pleaded as a defense to the note that the payee was so far mentally deranged prior to and at the time the compromise was made and the note executed, as to be absolutely incompetent and incapable of entering into a contract of any kind. It was the contention of the defendant in the lower court, and it is his contention here, that when one of two parties to a contract is insane at the time of its execution there cannot be a concurrence of minds capable of contracting, and that therefore such a contract is void in law and not enforceable against either party.

This contention cannot be sustained. Section 38 of the Civil Code, which declares that "A person entirely without understanding has no power to make a contract of any kind," was enacted for the benefit and protection of persons who are entirely devoid of capacity to comprehend the nature and subject of a contract, and it cannot be invoked by a person of sound mind in an attempted avoidance of a contract which he may have made with a person subsequently ascertained to be of unsound mind. Assuming, as the defendant claims, that the evidence conclusively and without conflict shows that the payee of the note in the case at bar was wholly insane at the time the compromise was effected and the note executed, that fact alone could not be properly pleaded and proven as a legal defense to the note. (*Caldwell* v. *Ruddy,* 2 Idaho, 1, [1 Pac. 339]; *Allen* v. *Berryhill,* 27 Iowa, 534, [1 Am. Rep. 309]; *Atwell* v. *Jenkins,* 163 Mass. 362, [47 Am. St. Rep. 463, 28 L. R. A. 694, 40 N. E. 178]; *Warmsley* v. *Darragh,* 12 Misc. Rep. 199, [33 N. Y. Supp. 274].)

The case of *Allen* v. *Berryhill,* 27 Iowa, 534, [1 Am. Rep. 309], was also an action upon a promissory note. In its essential features that case was very similar to the case at bar. There, as here, the defense was that the payee was totally insane when the note was made and wholly incapacitated to enter into a contract. In deciding that such a defense was not available to a person of sound mind, the court said: "Where a person of unsound mind makes a contract which is beneficial to him, the law supplies or presumes the existence

of the requisite capacity, or for his protection estops the other party to set up and sustain this objection. . . . It is the opinion of the court that justice and sound policy concur in requiring it to hold, as it does, that where a contract has been entered into (under circumstances which would ordinarily make it binding) by a sane person with one who is insane, and that contract has been adopted and is sought to be enforced by the representatives of the latter, it is no defense to the sane party merely to show that the other party was *non compos mentis* at the time that the contract was made.''

It was further pleaded, and it is now urged upon behalf of the defendant, that the insanity of the payee of the note at the time of its execution by operation of law terminated the powers of his attorney in fact, and thereby rendered nugatory the compromise and the note given in consideration thereof. It may be conceded that if the payee at the time of the compromise was a person entirely without understanding within the meaning of section 38 of the Civil Code, the powers of his attorney in fact under the general power of attorney previously executed were terminated by operation of law as between the principal and agent and as to every other person having notice of the principal's disability. (Civ. Code, sec. 2356.) The general rule of law, however, which terminates the agent's authority during the period of the principal's total insanity is subject to the qualification that if, upon his restoration to reason, the principal ratifies or fails, after knowledge, to repudiate the acts of his agent, the powers previously granted will be considered merely as suspended, and the acts done by the agent will be deemed assented to by the principal. (*Davis* v. *Lane,* 10 N. H. 156; 1 Clark & Sayles on Agency, sec. 19, p. 44; sec. 187, pp. 442, 443.)

In the case at bar, Gage, the alleged insane person and payee of the note in controversy, upon being restored to reason indorsed and assigned the note to the plaintiff for the purpose of collection. This was undoubtedly an acceptance of the note and a ratification of the compromise from which the note emanated, and upon the principle that ''He who can and does not forbid that which is done in his behalf is deemed to have bidden it'' (Civ. Code, sec. 3519), Gage would by the judgment here be forever estopped from claiming or suing upon the original pre-existing indebtedness.

However that may be, we are not now confronted with the case of a person known or judicially declared to be a person afflicted with a complete and permanent form of insanity.

The evidence upon the whole case by no means supports the defendant's assertion that the payee here was at the date of the note or at any other time wholly without understanding. The trial court found as a fact "That at the time said W. S. Gage entered said sanatorium his mental capacity had become greatly impaired and that he was afflicted with a mental disease known as and called melancholia; that he was then a person of unsound mind but was not entirely without understanding, nor had his capacity been judicially determined; that at the time of the execution of said promissory note he had sufficient mental capacity to understand the nature and purpose of said transaction; that on or about the seventeenth day of September, 1907, and for a long time prior thereto, said W. S. Gage was of sound mind, and was so at the time he left said sanatorium, and ever since has been and now is of sound mind."

In substance it was further found as a fact that before the commencement of this action, and in the year 1908, said W. S. Gage personally indorsed and assigned said promissory note to plaintiff as trustee for the purpose of collection. No claim is made that the latter finding is contrary to the evidence; and in our judgment the evidence upon the issue of the defendant's insanity is without conflict, and fully supports the findings of the trial court upon that phase of the case. True, all of the witnesses were agreed that Gage was insane from the time he entered the sanatorium until he was discharged as cured in September, 1907. No witness, however, either fact or expert, testified that Gage was so insane during this time as to be wholly without understanding in the sense required by section 38 of the Civil Code. On the other hand, the un-contradicted testimony of Dr. A. M. Gardner, called as a witness for the plaintiff, was to the effect that while under his care and observation Gage was undoubtedly insane, but that at no time was he so far mentally deranged as to be entirely incapable of knowing the nature and the purpose of the transaction in question; and that when discharged in September, 1907, Gage was completely cured and fully restored to the possession of his mental faculties. Obviously section 39 of the

Civil Code cannot be invoked in aid of the defense pleaded here. That section provides that "A conveyance or other contract of a person of unsound mind but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission as provided in the chapter on rescission . . ."; and, like section 38 of the same code, was enacted for the benefit and protection of incompetent persons. Manifestly the right to rescind a contract entered into with a person of sound mind is, by the provisions of section 39, conferred solely upon the incompetent or his representatives, and until that right is exercised the contract is binding upon the party of sound mind.

A person of unsound mind whose incapacity has been judicially determined cannot make a contract nor delegate any power until his restoration to capacity (Civ. Code, sec. 40); but the contract of a person of unsound mind, although not entirely deprived of understanding nor judicially determined to be insane, is not void but merely voidable. (*More* v. *Calkins,* 85 Cal. 177, [24 Pac. 729]; *Castro* v. *Giel,* 110 Cal. 292, [52 Am. St. Rep. 84, 42 Pac. 804]; *Ripperdan* v. *Weldy,* 149 Cal. 667, [87 Pac. 276].)

It would seem, therefore, that a person may be insane in the general acceptation of the term, and yet his insanity may be of such a character as not to deprive him entirely of the power of knowing and understanding the nature of ordinary business transactions, and that such form of insanity, or rather unsoundness of mind, will not render a person legally incapable of entering into a valid contract. (*Motley* v. *Head,* 43 Vt. 631; *Dennett* v. *Dennett,* 44 N. H. 531, [84 Am. Dec. 97].)

It follows that if Gage was not, as the trial court found, so far insane at the time of the compromise as to be considered a person entirely without understanding, he in person would have been legally capable of conducting and completing negotiations for the settlement of his claim against the defendant, and, as a matter of course, that which Gage could do in person might also be done by his agent and attorney in fact.

The defendant objected to the testimony of Dr. Gardner upon the ground that the knowledge of the witness was acquired in the capacity of a physician in attendance upon a patient; and it is now insisted that the trial court's action in

overruling the objection was error. The ruling, under the facts and circumstances of this case, was free from error.

The general rule of law, found in subdivision 4 of section 1881 of the Code of Civil Procedure, which in effect declares that a physician may not give in evidence any information concerning the ailment of his patient which was acquired in the course of his employment and necessary to the performance of his professional duties, was created for the protection of the patient. It operates upon the physician alone, and confers a personal privilege on the patient, which may be expressly or impliedly waived by him in person or by an attorney or agent acting on his behalf. (*Lissak* v. *Crocker,* 119 Cal. 442, [51 Pac. 688] ; *Alberti* v. *New York etc. Ry. Co.,* 118 N. Y. 77, [6 L. R. A. 765, 23 N. E. 35].) If Gage in person had sued upon the note in controversy, he would undoubtedly have waived the privilege which the law gives him of sealing the mouth of his physician by calling the latter to testify. The assignment of the note to plaintiff for the purposes of collection certainly made the plaintiff the agent of Gage, and carried with it the implied consent to use such means and introduce such evidence upon the trial of the case as might be necessary to a recovery on the note, and therefore, the act of plaintiff in calling and examining Dr. Gardner as a witness must be held to be Gage's act and Gage's waiver of the confidence reposed by him in his physician.

The note in controversy was in the form of a one-day note, and provided for interest upon the full amount thereof at the rate of one per cent per annum until paid, but the concluding clause of the note provided that it was "payable at the rate of $50 per month." The parties to the action proceeded to trial upon the theory that the note was payable in the installments specified, and the trial court accordingly rendered judgment for the principal sum of $1,200, which was the amount found to be due and unpaid at the commencement of the action, and in addition awarded interest thereon in the sum of $146.

The defendant now makes the point that the concluding clause of the note controlled the entire instrument, and must be construed to mean that the interest was not payable immediately, and that therefore the trial court could render judg-

ment only for the balance due on the note to the date of the action.

The note in the particulars stated is ambiguous and susceptible of two different constructions, either of which would be proper, and the trial court rightfully adopted that which was most favorable to the party in whose favor the note was made. (Code Civ. Proc., sec. 1864; *Balfour* v. *Fresno,* 109 Cal. 221, [41 Pac. 876].)

The judgment appealed from is affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 14, 1912.