Filed 3/12/15  In re D.J. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.J., a Person Coming Under the Juvenile Court Law. | B257573 (Los Angeles County Super. Ct. No. DK04511) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.H., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Annabelle Cortez, Judge.  Dismissed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————————

M.H. (father) appeals from the dependency court's jurisdictional finding that his daughter, D.J., born in March 2014, is a minor described by Welfare and Institutions Code section 300, subdivision (b), because father's mental and emotional problems render him incapable of providing regular care and supervision.[1]  Father contends that the court erred by permitting disclosure of his mental health records to the Los Angeles County Department of Children and Family Services (Department) and admitting those mental health records into evidence at adjudication.  He further contends that without his medical records, the Department did not present substantial evidence to support the court's jurisdictional finding.  Father does not appeal the jurisdictional findings as to K.J.'s (mother) substance abuse and mental health issues, and she is not a party to this appeal.  In addition, father does not appeal the court's dispositional orders.

Regardless of whether the court erred in permitting disclosure and admission of father's medical and mental health records, jurisdiction will still exist based on the sustained allegations against mother.  Accordingly, father's contentions on appeal are not justiciable, and his appeal is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2014, the Department took infant D.J. into protective custody from the hospital where mother had tested positive for marijuana at the time of D.J.'s birth.  The Department filed a petition alleging that mother had a history of substance abuse, was a current user of methamphetamine, and had mental and emotional problems including a psychotic disorder.  The petition contained no allegations against father.  The court detained D.J. and ordered monitored visits for mother and father.

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

When the Department interviewed father on May 13, 2014, it received information that raised concerns regarding father's ability to care for a young infant. Father had been convicted on misdemeanor charges for cruelty to animals in 1998, but he explained that he had not been directly involved in the stomping death of a dog. Father had received supplemental security income (SSI) in the amount of $850 a month for 10 years, but he did not remember why he received SSI. Father denied suffering from any mental health issues currently, but admitted that he had been hospitalized for mental health issues twice in 2013. According to father, he was first involuntarily hospitalized in the summer of 2013 when law enforcement found him in public without his clothes and considered him to be combative. He claimed he had just been working without a shirt. Father said he spent four days in the hospital, and was discharged without any treatment plan or having been prescribed any psychotropic medication. The second hospitalization acknowledged by father occurred in December 2013, after father got into a fight with his cousin, and paternal grandmother (father's mother) insisted he go to the hospital. Father was voluntarily hospitalized; he could not remember the details, but believed he was at Charter Oaks Hospital. The Department observed father to have cognitive difficulties. A paternal aunt assisted father in day-to-day responsibilities, arranged visitation with D.J., and transported father to the visits. The Department wanted to obtain police reports and more information regarding father's hospitalizations in order to make a better judgment about father's ability to care for D.J. The Department's jurisdiction/deposition report, submitted on May 15, 2014, stated, "Although [father] is currently considered a non offending father, the [D]epartment has concerns pertaining to [his] ability to appropriately care for [D.J.] . . . [Father] has had two psychiatric hospitalization[s]." The report goes on to say, "If it is determined at the conclusion of the above assessments and evaluations that [father] has mental health and or developmental concerns, the [D]epartment will file a first amended petition . . . ."

On May 27, 2014, the date originally scheduled for an adjudication hearing, the Department received a packet of documents in response to a May 20, 2014 subpoena to Charter Oaks Hospital, and requested to continue the adjudication hearing to permit the

3

Department to file a first amended complaint with jurisdictional allegations against father. The Department's counsel provided copies of the hospital records to all counsel, stating, "The Department just received about an inch and a half thick worth of documents this morning, before lunch, regarding [father's] mental health and substance abuse issues. [¶] I anticipate the Department will be filing a first amended petition [regarding him]." Father was present in court, but neither he nor his counsel objected to the disclosure of the medical records at the time.

One week later, on June 3, 2014, father filed a motion in limine to suppress and exclude admission of his medical and mental health records, arguing that he had not authorized disclosure of such records. In his motion, he argued that the records were protected by the psychotherapist-patient privilege under Evidence Code section 1010, et seq. He also argued that section 5328 limited disclosure of the records because they were obtained in the course of providing mental health services to father. Finally, father argued that "[e]ven if the court finds that a valid waiver [of the psychotherapist-patient privilege] occurred, it 'should exercise its discretion in excluding such evidence at trial unless its probative value is substantially outweighed by the harm that may be caused by public disclosure.'"

On June 11, 2014, the Department filed its opposition to father's motion in limine, arguing that by failing to object to the disclosure of his mental health records, father had waived any privilege attached to those records, and the court had authority under section 5328 to permit disclosure of records "as necessary to the administration of justice." (§ 5328, subd. (f).)

Also on June 1, 2014, the Department filed a first amended complaint, adding count b-3, which alleged father "has mental and emotional problems including a diagnosis of Paranoid Schizophrenia, Bipolar Disorder Manic with psychosis, Schizoaffective disorder and Psychosis NOS, which renders father incapable of providing regular care and supervision of [D.J.] On 06/06/2011, 11/27/2012 and 12/25/2013, the father was hospitalized for evaluation and treatment of the father's psychiatric condition. On 06/06/2011, the father was also diagnosed with Paranoid Schizophrenia Cannabis

4

abuse. Such mental and emotional condition on the part of the father endangers [D.J.'s] physical health and safety and places [D.J.] at risk of physical harm and damage."

At the June 25, 2014 hearing on father's motion in limine, the court reviewed the subpoenaed documents in camera and concluded most were subject to disclosure under section 5328, because the compelling interest in protecting D.J. outweighed father's right to privacy. The court also noted that the safety of the child is paramount in dependency proceedings. The court identified those documents that were not subject to disclosure by tabbing them, and ordered the Department's counsel to retrieve them from the other counsel to whom they had been distributed. The court deferred the question of admissibility of the documents to the adjudication hearing.

On June 27, 2014, the Department filed a "Last Minute Information" report, attaching the mental health records that the court had found subject to disclosure. The documents reveal that on June 6, 2011, father was placed on a 72-hour involuntary hold under section 5150 because he had not been compliant with his psychotropic medications for two months; was violent towards his family; and had been "pushing" family members and struck his mother in the mouth. He was diagnosed with paranoid schizophrenia and cannabis abuse, and his involuntary hospitalization was extended to 14 days because he had been unresponsive to treatment and was determined to be unsafe to be discharged after the 72-hour hold. He was discharged on June 13, 2011, with instructions to attend a "partial hospital program" at the hospital, and continue to take his medications. Father's prognosis was "[f]air if [he] can remain compliant with all outpatient treatment recommendations and remain sober."

On November 27, 2012, father was brought to the hospital by police for being a danger to others after being found in a parking lot wearing only his underwear. When father was approached by the officers, he told them he had thrown his clothes into a fountain and that he wanted to kill someone that night. Father was diagnosed with schizoaffective disorder and marijuana dependence. He was discharged with directions to follow up with outpatient services, and it was believed he "should do well, if he

remain[ed] complian[t] with medications, remain[ed] sober, and remain[ed] compliant with treatment recommendations."

On December 25, 2013, father was brought to the hospital by his mother and voluntarily admitted himself to the hospital. According to father's mother, father had not slept for three days, had been "manic" for a few days, had a physical altercation with his cousin, and had put his hand through a car window. On the first day of father's admission into the hospital, he was very "manic;" cursing, screaming, disrobing, running in the hall, and tearing a mattress. Father was determined to be a "risk of harm to others." The hospital noted that, among other things, father had a "[h]istory [of] homicidal assaultive ideations or behavior," was "[i]mpulsive/unpredictable," and made "[t]hreatening gestures." Father was diagnosed with "Bipolar disorder, severe, manic with psychosis. Polysubstance dependence." The hospital gave him psychotropic medications and various forms of therapy. His discharge plan was to follow up with a psychiatrist and a primary care physician, and to participate in programs.

The Department reported that father's family members were reluctant to make any statements regarding father's mental stability. Maternal great great grandmother stated that father's mental health issues were apparent. Paternal aunt stated that on one occasion, father was released to her by the hospital because he was a danger to himself and others. She also reported that the paternal grandmother and other paternal relatives refused to discuss father with the Department.

At the June 27, 2014 contested jurisdiction and disposition hearing, the Department entered into evidence its jurisdiction/disposition report as well as the last minute information, attaching the mental health records the court had previously ordered subject to disclosure under section 5328. Father's counsel objected to the disclosure and admissibility of the records on the ground of father's right to privacy, arguing that father had not consented to the disclosure of the records for any purpose. The court repeated its finding that the records were disclosable under section 5328, and also found them admissible because they were relevant to the proceedings. Father entered into evidence a letter evidencing his participation in a 12-week parenting course. Father called paternal

aunt, who testified that father had a great relationship with her family and she denied being aware of any history of mental illness.

After considering all the evidence and finding paternal aunt's testimony not credible, the court sustained both counts (b-1 and b-2) against mother, and count b-3 against father, finding his mental and emotional problems rendered him incapable of providing regular care and supervision of D.J., endangered D.J.'s physical health and safety, and placed D.J. at risk of physical harm and damage.

With respect to disposition, father agreed to an order that he take a parenting class, attend individual counseling, and submit to a mental health evaluation with the evaluator having access to his mental health records. He did not agree to an evaluation under Evidence Code section 730. The court declared D.J. a dependent, found by clear and convincing evidence under section 361, subdivision (c) there would be a substantial risk to D.J. if she were returned to the parents, removed the child from parental custody, and ordered monitored visits and reunification services for the parents, including a section 730 evaluation over father's objection. Father filed a timely notice of appeal.

## DISCUSSION

Father challenges only the jurisdictional finding based on his mental and emotional problems, contending that absent the erroneous disclosure and admission of his mental health records, there was not substantial evidence to support count b-3 of the petition. He does not challenge the court's jurisdictional findings on counts b-1 or b-2, which relate to mother's substance abuse and mental health. Because neither parent has appealed the court's exercise of jurisdiction under counts b-1 and b-2, relating to mother's drug use and mental health problems, we decline to exercise our discretion to address whether the court erred in ordering disclosure and admission of father's mental health records, and whether substantial evidence supports the jurisdictional findings against father. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490-1492.)

7

The court will retain jurisdiction based on the jurisdictional findings related to mother, regardless of the outcome on father's appeal. "'[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent. [Citations.] This accords with the purpose of a dependency proceeding, which is to protect the child, rather than prosecute the parent.' [Citations.] The child thus remains a dependent of the juvenile court." (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.) "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

In *In re Drake M*. (2012) 211 Cal.App.4th 754 (*Drake M.*), Division Three of this court summarized the factors influencing whether a court will exercise its discretion to reach the merits of a challenge to a jurisdictional finding. According to *Drake M.*, a court will generally reach the merits when the finding in question "(1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* [(2009) 171 Cal.App.4th 438,] 454); (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; see also, *In re I.A.*[, *supra,*] 201 Cal.App.4th [at p.] 1494); or (3) 'could have other consequences for [the appellant], beyond jurisdiction' (*In re I.A., supra*, at p. 1493, [not reaching the merits of an appeal where an alleged father 'has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings'])." (*Drake M., supra*, at pp. 762-763.) In *Drake M.*, the court determined the difference between father being an "offending" parent versus a "non-offending" parent was enough prejudice to warrant the exercise of discretion. The court reasoned, "Such a distinction may have far reaching implications with respect to future

dependency proceedings in this case and father's parental rights." (*Id.* at p. 763.)  In *Drake M.*, the father did not challenge jurisdictional findings based on mother's extensive history of drug abuse, but appealed the jurisdictional findings and dispositional orders against him based solely on his use of medical marijuana.  The child was 14 months old, well fed, and well cared for, and father was employed.  The Department reported that father appeared capable of providing for the child's basic needs, and at disposition, the court had ordered the child to remain placed with father, but also ordered father to attend drug counseling and undergo drug testing.  (*Id.* at pp. 758, 760-762.)

In the case before us, father's situation is very different.  Even before attempting to obtain father's mental health records, the Department had expressed concern about father's ability to care for D.J.  He had received SSI for 10 years, but neither he nor any of his family members could explain why.  Paternal aunt needed to assist father in his daily affairs because of his limitations.  Father admitted to two psychiatric hospitalizations in 2013.  First, he was involuntarily hospitalized after police found him without a shirt and found him to be combative.  The second hospitalization occurred after he got into a fight with his cousin, and his mother insisted he go to the hospital.  The Department's jurisdiction and disposition report stated it was in the process of obtaining police reports relating to his 1998 conviction for animal cruelty and mental health records relating to his 2013 psychiatric hospitalizations.  The Department recommended that father undergo both a section 730 evaluation and a regional center assessment "to rule out other mental health concerns and or [d]evelopmental concerns."

Father insists this court should exercise its discretion to examine the jurisdictional finding against him so that we may correct the lower court's purported error in admitting his mental health records before jurisdiction had been established.  He argues that but for the court's error permitting disclosure of the documents, he would be a "non-offending" father entitled to immediate custody of D.J.  He also argues that the court's error is prejudicial because without the mental health records, the Department lacked sufficient evidence to establish jurisdiction.  Finally, he argues that the disclosure of his mental health records and the inclusion of those records in the dependency court file, constitutes

9

prejudicial error, not only because it harms his dignity, but because the records may be used against him in a future dependency proceeding. We find each of father's arguments unpersuasive.

First, we do not read *Drake M.*, *supra*, 211 Cal.App.4th at page 763, as holding as a matter of law that the characterization of a parent as "offending" renders any challenge to a jurisdictional finding justiciable. As discussed earlier, the facts relating to the father in *Drake M.* bear no resemblance to father's mental health issues as demonstrated independent of the subpoenaed hospital records. *Drake M.* recognizes that the determination of justiciability is discretionary, which necessarily means the decision turns on the facts of each individual case. Moreover, as explained by the court in *In re I.A., supra,* 201 Cal.App.4th at page 1494, the only provision in the dependency statutes distinguishing offending and non-offending parents is section 361, subdivision (c)(1), which requires the court to permit a non-offending parent to retain custody of a child when the child is removed from an offending parent. But here, as in *In re I.A.,* father never resided with the child, and so that provision is not relevant. Father inaptly cites to section 361.2, under which a court must place a child with a non-custodial parent who requests placement, absent a finding of detriment, but father never even requested placement under that section.

Second, father has not met his burden to show any error by the court in admitting his mental health records was prejudicial. Father admitted to two psychiatric hospitalizations in 2013, presumably while mother was pregnant, and the Department had expressed concerns about his ability to care for D.J., given his apparent mental or developmental limitations. We see no possibility that, absent admission of the mental health records, the court would have granted father custody of D.J., or that father will suffer harm in any future proceedings based solely on the presence of the psychiatric records in the dependency court file. The reality is that the evidence—even ignoring any communications father considers privileged contained in the subpoenaed records—raises grave concerns about father's ability to care for a young child. Any court considering future dependency proceedings involving father must take into account all factual

10

circumstances at the time of the hearing.  (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.)  A court would be derelict in its duty if it were to ignore the facts present here, which include an involuntary hospitalization after father was found in the street without any clothes, and a voluntary hospitalization after father punched his mother in the mouth and put his hand through a car window.  Recognizing some of these facts are included in the mental health records, we note that they would not be considered privileged communications protected under Evidence Code section 1010, et seq.  "The paramount purpose underlying dependency proceedings is the protection of the child.  [Citations.] 'The parents do not represent a competing interest in this respect.'  [Citation.]" (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1215.)  Any harm father points to is purely speculative.

## DISPOSITION

We dismiss father's appeal.

KRIEGLER, J.

I concur:

TURNER, P. J.

11

Mosk, J., Dissenting.


I respectfully dissent from the dismissal of the appeal on the issue of justiciability. I would reverse the jurisdictional order as to father.


### A.    Justiciability

The finding that father's mental and emotional problems placed the child at substantial risk of suffering serious physical harm or illness (Welf. & Inst. Code, § 300, subd. (b))[1] may well affect efforts by father to recover custody of the child. Because this case is only at the jurisdictional and disposition stage, significant proceedings are likely in the future. Father may be prejudiced at one or more of those proceedings by any jurisdictional finding directed at him. The erroneous admission of father's mental health records may have been the difference between the juvenile court finding that father was an "offending" parent instead of a "non-offending parent."

To challenge a jurisdictional finding, father needs only show that it "could potentially" impact the current or future dependency proceedings. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762; *In re D.P.* (2014) 225 Cal.App.4th 898, 902 ["we may . . . exercise our discretion to reach the merits of a challenge to any jurisdictional finding when the finding *may be* prejudicial to the appellant, and here, the finding that mother intentionally hurt her daughter has *the potential* to impact future dependency proceedings"], italics added; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 [if the jurisdictional finding "is erroneous [it] has *the potential* [of being prejudicial to mother if she is involved in future child dependency proceedings] and, therefore, [we] shall consider the merits of her appeal"], italics added.)

---

[1]     All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

1

As this court has discretion to consider jurisdictional findings under these circumstances, I would exercise such discretion to consider the jurisdictional finding as to father "when, as here, the outcome of the appeal could be 'the difference between father's being an "offending" parent versus a "non-offending" parent,' a finding that *could* result in far-reaching consequences with respect to . .. *future* dependency proceedings . . . . (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 [149 Cal.Rptr.3d 875]; see *In re D.P.* (2014) 225 Cal.App.4th 898, 902 [170 Cal.Rptr.3d 656]; *In re I.A.* [(2011) 201 Cal.App.4th 1484,] 1494.)" (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613, italics added; see also § 361.2.)[2]

## B.     Disclosure and Admissibility of Mental Health Records

The Department of Department of Children and Family Services (Department) issued a subpoena to the custodian of records for Charter Oak Hospital requesting copies of any and all medical records, including mental health records, pertaining to father. The Department's counsel declared that the requested records "are material to the issues involved in the case by reason of the following facts: THE FORGOING CONSTITUTES EVIDENCE OF CIRCUMSTANCES ALLEGED IN THE PETITION. That good cause exists for the production of the [records] by reason of the following facts: [¶] THE NECESSARY EVIDENCE CAN BE ESTABLISHED IN NO OTHER WAY." The subpoena directed the custodian of records to place the responsive records in a sealed envelope and mail it to the clerk of the juvenile court.

Father and his counsel were present at the adjudication hearing. The Department's counsel stated during the hearing, "The Department just received about an inch and a half worth of documents this morning, before lunch, regarding [father's] mental health and substance abuse issues. [¶] I anticipate the Department will be filing a first amended petition [regarding him]."

---

[2]     It goes without saying that a decision to exercise such discretion does not suggest that a contrary decision is an abuse of discretion.

Father filed a motion in limine to suppress and exclude admission of his mental health records based on section 5328 because they were "obtained in the course of providing services . . . commencing with section 5000 . . . .", and are protected from disclosure by the psychotherapist-patient privilege provided by Evidence Code section 1010, et seq. Father also contended in the motion that "[e]ven if the court finds that a valid waiver [of psychotherapist-patient privilege] occurred, it 'should exercise its discretion in excluding such evidence at trial unless its probative value is substantially outweighed by the harm that may be caused by public disclosure.'" The Department filed a response to father's motion in limine and the first amended petition.

Ultimately, the juvenile court determined that the mental health documents were subject to disclosure and admissibility. The juvenile court relied on the documents in finding for jurisdictional purposes that father's mental and emotional condition endangered the child's physical health and safety and placed the child at risk of physical harm and damage.

Father's psychiatric records are privileged. (Evid. Code, § 1014.) Evidence Code section 1014 provides that a patient "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . ." Evidence Code section 1012 states that "'confidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship." As discussed, records that might be discloseable to the court under section 5328, subdivision (f) as necessary to the administration of justice are not subject to disclosure to the parties if subject to the psychotherapist-patient privilege.

3

## 1. *Waiver of Privilege*

The Department contends that father waived the psychotherapist-patient privilege when, prior to the Department subpoenaing his mental health records, he disclosed to the Department that he had been receiving SSI (which, as the Department argues, "was most likely [for] a mental impairment"); had been committed to a psychiatric hospital on two occasions when law enforcement found him "late at night after working out without his clothes on;" had participated in a physical altercation with his cousin; and put his hand through a car window.

The patient is the holder of the psychotherapist-patient privilege. (Evid. Code, § 1013; *Mavroudis v. Superior Court* (1980) 102 Cal.App.3d 594, 602, fn.1.) "Waiver requires the intentional relinquishment of a known right upon knowledge of the facts. The burden is on the party claiming a waiver of right to prove it by clear and convincing evidence that does not leave the matter to speculation. As a general rule, doubtful cases will be decided against the existence of a waiver. [Citations.]" (*Ringler Associates Inc. v. Maryland Casualty Co*. (2000) 80 Cal.App.4th 1165, 1188.)

"[T]he psychotherapist-patient privilege may be waived when the *patient* voluntarily discloses otherwise confidential information or tenders her mental state as an issue. [Citation.]" (*San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092.) The Department did not carry its burden to prove father's waiver of his psychotherapist-patient privilege by establishing that father disclosed voluntarily his mental health information to the Department.

Under Evidence Code section 912, subdivision (a), a waiver of the privilege requires disclosure of "a significant part" of the confidential communication. Father did not disclose a significant part of the privileged communication. As the Department concedes, a patient does not waive his psychotherapist-patient privilege merely by disclosing that he received psychiatric treatment from a specified psychiatrist following a particular event. (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 341.) "There is, of course, a vast difference between the disclosure of a general description of the object of

4

her psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy." (*Ibid*.)

Father's statements to the Department regarding his history of mental health issues were limited. Father admitted to the Department that he had been hospitalized for mental health reasons twice in 2013. According to father, the first hospitalization occurred involuntarily when he was found by law enforcement in public without all or some of his clothes on and was combative, and was discharged from hospital after four days without any treatment plan or prescribed any psychotropic medication. Father said the second hospitalization occurred voluntarily after he had a fight with his cousin because father's mother believed that he needed to "be assessed."

Father did not waive the privilege by not objecting to the copying and distribution of the records to other counsel. There is no "evidence" in the record that the Department's counsel disclosed father's mental health records to the other counsel. Statements in the record to the effect that the Department distributed copies of the subpoenaed records to all counsel were made by counsel for the Department and father, without a supporting declaration or other evidence.

In addition, the acquiescence of father's counsel to the copying and distributing of the records is not a waiver of the privilege. Father, and not father's counsel, is the holder of the privilege. As stated by Evidence Code section §1013, the holder of the psychotherapist-patient privilege is the "(a) patient when he has no guardian or conservator. [¶] (b) A guardian or conservator of the patient when the patient has a guardian or conservator. [¶] (c) The personal representative of the patient if the patient is dead." (Evid. Code, §1013, subds. (a)-(c).) Evidence Code section 1013 does not state that the patient's attorney is the holder of the privilege. (See *In re Lifschutz* (1970) 2 Cal.3d 415, 430, fn. 11 ["The statutory privilege established in section 1014 of the Evidence Code is a privilege of the patient, not of the psychotherapist"].) Similarly, in the context of a child in a dependency proceeding being the patient, if the child is of sufficient age and maturity to consent, he or she, as the patient, is the holder of the psychotherapist-patient privilege, and the child's counsel may invoke the privilege only

5

when the child has consented to it.  (§ 317, sub. (f)).  Indeed, even when the child's counsel invokes the privilege, the child may waive it.  (*Ibid*.)  A privilege may be waived only by one who is the "holder" of the privilege.  (*Rittenhouse v. Superior Court* (1991) 235 Cal.App.3d 1584, 1588.)  In addition, there is no evidence in the record that father authorized his counsel to disclose the mental health records.

The court in San *Francisco Credit Clearing-House v. MacDonald* (1912) 18 Cal.App. 212, citing *Lissak v. Crocker* (1897) 119 Cal. 442 and *Alberti v. New York etc. Ry. Co.* (N.Y. 1889) 23 N.E. 35, stated that the physician-patient privilege under former Code of Civil Procedure section 1881, subdivision 4, "confers a personal privilege on the patient, which may be expressly or impliedly waived by him in person or by an attorney or agent acting on his behalf." (*San Francisco Credit Clearing-House v. MacDonald*, *supra*, 18 Cal.App. at p. 219.)  The court in *Lissak v. Crocker*, *supra*, 119 Cal. 442, however, did not hold that the physician-patient privilege may be waived "by an attorney or agent acting on [the patient's] behalf."  And to the extent the court in *Alberti v. New York etc. Ry. Co., supra,* 23 N.E. 35 stated that the physician-patient privilege may be waived by the patient's attorney, because that case is over 126 years old and concerned New York law, it should be disregarded.  The California Supreme Court, quoting the Law Revision Commission comment accompanying Evidence Code section 1014, stated that the "'psychotherapist-patient privilege . . . provides much broader protection than the physician-patient privilege.'" (*People v. Gonzales* (2013) 56 Cal.4th 353, 371; Cal. Law Revision Com. com., reprinted in Deering's Ann. Evid. Code (2004 ed.) foll. § 1014, p. 217.)  Because *San Francisco Credit Clearing-House v. MacDonald*, *supra*, 8 Cal.App. 212 concerned the narrower protection of the physician-patient privilege instead of the broader protection afforded by the psychotherapist-patient privilege, is over 100 years old, and does not appear to be in conformity with the present law, I would not follow the quoted language of that Court of Appeal decision.

Furthermore, "'[t]he waiver of an important right must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and *likely consequences*.' (*Roberts v. Superior Court*, *supra*, 9 Cal.3d at p. 343, italics added.)"

6

(*San Diego Trolley, Inc. v. Superior Court, supra,* 87 Cal.App.4th at p. 1092.) Although father was present at adjudication hearing at which the Department's counsel stated that the Department just received documents regarding father's mental health issues, there is no evidence that father himself, as holder of the privilege, had "sufficient awareness of the relevant circumstances and likely consequence" of failing to object. (*Ibid.*) There is no basis for presuming that father had such sufficient awareness of this because in its report the Department stated that it appeared father had "cognitive difficulties and or limitations," and father said, "My sister helps me because sometimes I don't understand everything . . . ." As noted above, the Department has the burden of establishing waiver by clear and convincing evidence. (*Ringler Associates Inc. v. Maryland Casualty Co.*, *supra*, 80 Cal.App.4th at p. 1188.)

In addition, the inadvertent disclosure of documents subject to a privilege is not a waiver of that privilege. (*State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 654.) As noted above, "[D]oubtful cases will be decided against the existence of a waiver." (*Ringler Associates Inc. v. Maryland Casualty Co.*, *supra*, 80 Cal.App.4th at p. 1188.) In ruling on father's motion in limine filed after the disclosure of the documents, the juvenile court did not find that father waived his objection to the disclosure of the documents. Father did not waive his right to challenge the disclosure of his mental health records.

### 2. Forfeiture

The Department also contends that father forfeited his right to complain on appeal about the disclosure of his mental health records because he and his counsel failed to object to those records being copied and distributed by the Department's counsel to the other counsel. I disagree.

"Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.] The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or

7

avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection . . . . [Citation.]" (*People v. French* (2008) 43 Cal.4th 36, 46.) As our Supreme Court explained, "The [forfeiture] rule is designed to advance efficiency and deter gamesmanship." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.) "'"'The purpose of the general doctrine of [forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . .'"'" [Citation.]" (*People v. Simon* (2001) 25 Cal.4th 1082, 1103, citing *People v. Saunders* (1993) 5 Cal.4th 580, 590.)

As the Department concedes, the same day the envelope containing father's mental health records had been opened and the records distributed, father's counsel advised the Department that she "would be filing a motion to prevent [the] disclosure and use [of father's medical records] in the proceedings." Thereafter, father filed a motion in limine to suppress and exclude admission of his mental health records. Father thereby brought the alleged error to the attention of the juvenile court so that it may be corrected, and the juvenile court denied father's motion without finding that father was dilatory in making his request. Father did not forfeit on appeal his contention that the disclosure of his mental health records was improper.

### 3. *Disclosure of Father's Mental Health Records*

Father contends that the juvenile court erred by allowing the disclosure of his mental health records. Section 5328 provides in part, "All information and records obtained in the course of providing services . . . commencing with Section 5000[3] . . . to either voluntary or involuntary recipients of services shall be confidential. **. . .** Information and records shall be disclosed only in any of the following cases: [¶] . . . [¶] (f) To the courts, as necessary to the administration of justice. [¶] . . . [¶] (l)(1) Between persons who are trained and qualified to serve on

---

3    The parties agree that father was provided services commencing with Section 5000.

8

multidisciplinary personnel teams pursuant to subdivision (d) of Section 18951.[4] The information and records sought to be disclosed shall be relevant to the provision of child welfare services or the investigation, prevention, identification, management, or treatment of child abuse or neglect . . . . [¶] . . . (2) As used in this subdivision, 'child welfare services' means those services that are directed at preventing child abuse or neglect." (§ 5328, subd. (f) and (l)(1), (2).) "[S]ection 5328 states a limitation on disclosure, not a ground for admissibility of evidence." (*In re S.W.* (1978) 79 Cal.App.3d 719, 722.)

### a) Section 5328, subdivision (f)

The Department contends that the records were subject to disclosure to the juvenile court under section 5328, subdivision (f)—i.e., the records shall be disclosed to the courts, as necessary to the administration of justice. The juvenile dependency proceedings are part of the administration of justice for parents and children. (See *In re M.B.* (2011) 201 Cal.App.4th 1057, 1064 [in a dependency case the court noted, "All courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice"]; *In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264 [same]; *Ariz. Dep't of Econ. Sec. v. Superior Court* (Ariz. App. 1994) 871 P.2d 1172,

---

4    Section 18951, subdivision (d), provides, "'Multidisciplinary personnel' means any team of three or more persons who are trained in the prevention, identification, management, or treatment of child abuse or neglect cases and who are qualified to provide a broad range of services related to child abuse or neglect. The team may include, but need not be limited to, any of the following: [¶] (1) Psychiatrists, psychologists, marriage and family therapists, or other trained counseling personnel. [¶] (2) Police officers or other law enforcement agents. [¶] (3) Medical personnel with sufficient training to provide health services. [¶] (4) Social workers with experience or training in child abuse prevention, identification, management, or treatment. [¶] (5) A public or private school teacher, administrative officer, supervisor of child welfare and attendance, or certificated pupil personnel employee. [¶] (6) A CalWORKs case manager whose primary responsibility is to provide cross program case planning and coordination of CalWORKs and child welfare services for those mutual cases or families that may be eligible for CalWORKs services and that, with the informed written consent of the family, receive cross program case planning and coordination."

1173 [accepts jurisdiction in a dependency action "because the issue is important to the effective administration of justice in the juvenile court"].)

Father, citing *Gilbert v. Superior Court* (1987) 193 Cal.App.3d 161, 170, correctly states that subdivision (f) of section 5328 does not permit the juvenile court to disclose mental health records to any person or agency merely because it determines that it is necessary to the administration of justice. "Subdivision (f) of Section 5328 does not authorize the court to order disclosure of matter which the Evidence Code makes privileged. [Citation.]" (*People v. Gardner* (1984) 151 Cal.App.3d 134, 141; *Mavroudis v. Superior Court*, *supra*, 102 Cal.App.3d at p. 602.) That is, mental health records produced to the juvenile court pursuant to section 5328, subdivision (f) are subject to disclosure to the parties if the records are not subject to the psychotherapist-patient privilege under the Evidence Code.

The parties do not dispute that all of father's disclosed mental health records constitute "confidential communication[s] between patient and psychotherapist' as defined by Evidence Code section 1012. In disclosing father's mental health records, the juvenile court found that after weighing father's right to privacy against the compelling interests of the juvenile court in protecting the child, they were necessary to protect D.J.

Father's mental health records, subject to the psychotherapist-patient privilege provided by the Evidence Code, were not admissible evidence at the jurisdictional hearing. (*In re M.L.* (2012) 210 Cal.App.4th 1457, 1472, 1476 ["The court erred in . . . permitting mother's psychiatric records to be admitted into evidence [at the jurisdiction hearing] in whole" without first conducting an in camera review to determine on what, if any, records mother had waived the privilege].) "At the prejurisdictional stage, an allegation by the Department that a parent is mentally ill or the fact of mental illness alone does not justify a psychological examination of that parent. . . . Only after a finding the child is at risk, and assumption of jurisdiction over the child, do a parent's liberty and privacy interests yield to the demonstrated need of child protection." (*Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 202-203.) Subdivision (f) of Section 5328 therefore does not authorize the juvenile court to order disclosure of those

10

documents to the Department or any other parties to the dependency proceeding.  The juvenile court erred by allowing the disclosure of his mental health records to the Department pursuant to section 5328, subdivision (f).

The Department contends that pursuant to Evidence Code section 1024, father's mental health records are not privileged.  I do not agree.

Evidence Code section 1024 provides, "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger."  The confidentiality of patient-psychotherapist communications "must yield to the extent to which disclosure is essential to avert danger to others."  (*People v. Lakey* (1980) 102 Cal.App.3d 962, 977.)  Here, there is no evidence that the "psychotherapist ha[d] reasonable cause to believe that [father] is in such mental or emotional condition as to be dangerous to himself" or D.J. at the time of the jurisdictional hearing.  There is no such evidence from any psychotherapist.  Moreover, father's mental health records concerned his hospitalization for mental health reasons in June 2011, November 2012, and December 2013.  D.J. was not even born when father was hospitalized.  Disclosure of father's mental health records was not essential to avert danger to father or D.J.

### b)     Section 5328, subdivision (l)

The Department contends that the records were subject to disclosure to the juvenile court under section 5328, subdivision (l)—i.e., records relevant to the "investigation, prevention, identification, management, or treatment of child abuse or neglect."  Section 5328, subdivision (l) is inapplicable here because the Department did not seek disclosure of father's mental health records for the purpose of "investigation, prevention, identification, management, or treatment of child abuse or neglect."  Rather, the Department sought disclosure of the documents to establish jurisdiction.  In support of the subpoena, the Department's counsel declared that the requested records were necessary evidence of the circumstances alleged in the petition, and that evidence cannot

be established in any other way. "The clear language of the section 5328, subdivision (l) exception reflects an intent to disclose such documents for the purpose of aiding the department or other such entities to provide services and treatment to the victim and offender; it does not exist to provide an evidentiary basis with which to permit the department to prove its case, particularly not at the jurisdictional phase." *(In re M.L., supra,* 210 Cal.App.4th at p. 1470.) The juvenile court should not have allowed the disclosure of his mental health records pursuant to section 5328, subdivision (l).

### 4. *Admissibility of Mental Health Records*

Father contends that the juvenile court erred by admitting into evidence at the jurisdictional hearing his privileged mental health records. We review evidentiary rulings for abuse of discretion. (*In re Roberto C*. (2012) 209 Cal.App.4th 1241, 1249; *People v. Jablonski* (2006) 37 Cal.4th 774, 805.) The juvenile court held that the mental records were admissible at the jurisdictional hearing because they were "relevant to the proceedings." As stated above, however, father's mental health records were not admissible at the jurisdictional hearing. The juvenile court, therefore, abused its discretion in admitting those records into evidence over father's privilege objection. (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 590 [error of law constitutes abuse of discretion.].)

### C. Prejudice

The error in admitting father's mental health records into evidence at the jurisdictional hearing was not harmless. Based on the evidence before the juvenile court, father's mental health records were necessary for the juvenile court to find jurisdiction as to him.

If the outcome of a proceeding has not been affected by judicial error, such error is harmless and does not require reversal. (*In re James F*. (2009) 42 Cal.4th 901, 916-919.) The prejudicial nature of the error in disclosing and admitting into evidence mental health records and testimony is evaluated under the prejudicial error standard applicable to state

12

law error set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 [more favorable outcome for the appellant was reasonably probable absent the error]. (*People v. Gonzales*, *supra,* 56 Cal.4th at p. 357.)

It is true that without reference to father's mental health records, there was evidence that father historically had mental health issues. There is not substantial evidence, however, that at the time of the jurisdictional hearing, father still suffered from mental or emotional problems, or that based on those problems D.J. was at substantial risk of serious physical harm. Before the Department subpoenaed father's mental health records, it reported that it needed to conduct further investigation to conclude that father had mental health or developmental problems. Although father stated that in 2013, he had been hospitalized for mental health reasons there is no evidence, without the mental health records, for what mental health issues he was hospitalized, nor is there sufficient evidence that he suffered from those mental health issues at the time of the jurisdictional hearing. There also is no evidence that father's unspecified mental health issues endangered D.J. at the time of the jurisdictional hearing. Indeed, there is no evidence that father's unspecified mental health issues ever endangered D.J.; father stated that he was hospitalized for mental health reasons in 2013, but D.J. was not born until 2014.

There also was evidence that father had mental limitations requiring L.H.'s assistance with some of father's daily affairs. There was no evidence, however, that D.J.'s physical safety was endangered at the time of the jurisdictional hearing; L.H. assisted father with his unspecified "daily affairs."

Based on the evidence stated above (i.e., without the introduction into evidence of father's mental health records), it is reasonably probable that father would have obtained a more favorable outcome concerning the jurisdictional finding. The error was not harmless.

### D.    Substantial Evidence

Related to the harmless error analysis, father's contention that there is not substantial evidence to support the juvenile court's jurisdictional finding as to him absent the improperly admitted psychiatric records is meritorious. The juvenile court found that

D.J. was a dependent child of the juvenile court pursuant to section 300, subdivision (b) and sustained count b-3, which alleged that father's mental and emotional problems rendered father incapable of providing regular care and supervision of D.J., and endangered D.J.'s physical health and safety and placed D.J. at risk of physical harm and damage.  Section 300, subdivision (b) provides in pertinent part:  "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:  [¶] . . . [¶]  (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, *as a result of* . . . the failure or inability of the parent or guardian to adequately supervise or protect the child . . . ."  (Italics added.)

"A jurisdictional finding under section 300, subdivision (b) requires '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.]  'Subdivision (b) means what it says.  Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a substantial risk of serious physical harm or illness.'  [Citations.]" (*In re John M.* (2013) 217 Cal.App.4th 410, 418.)  The Department "has the burden of showing specifically how [the child has] been or will be harmed."  (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.)  Based on the evidence, without the introduction into evidence of father's mental health records, there is insufficient evidence that D.J. is at substantial risk of harm as a result of father's mental condition.

Accordingly, I would reverse the juvenile court's jurisdictional order as to father.


MOSK, J.


14